UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

CIVIL ACTION NO. 3:19-CV-0013-EBA

KIMBERLY ANN SISK,                                              PLAINTIFF,

V.                **MEMORANDUM OPINION AND ORDER**

ANDREW M. SAUL, Acting
Commissioner of Social Security,                                DEFENDANT.

**INTRODUCTION**

Kimberly Ann Sisk filed an application for Title II disability insurance benefits on October 8, 2013, alleging that she became disabled on January 1, 2008, but she later amended that onset date to July 2012. Her application was denied through the administrative process but following an appeal to the United States District Court, the case was remanded back to the Administration. Her case was then heard before a second Administrative Law Judge [ALJ] on June 21, 2018. In a decision entered on October 31, 2018, the ALJ ruled partially in her favor, finding that she became disabled as of July 24, 2017, when she turned 55, but was not disabled prior to that date. In evaluating the evidence in this case, using the five-step sequential evaluation process, the ALJ found at step one that Sisk has not engaged in substantial gainful activity since the alleged onset date of her disability. *See* 20 C.F.R. §§ 404.1520(a)(4), 404.1571 *et seq.* At step two, the ALJ determined that Sisk had medically determinable severe impairments of ischemic heart disease and tachycardia; status post open heart surgery with removal of mitral mass; fibromyalgia: status post stroke/cerebrovascular accident; osteopenia; degeneration of the cervical and lumbar spine with history of lumbar fusion in 2005; history of septic shock and renal failure in 2014; hospitalization for pneumonia in March 2018; moderate carpal tunnel syndrome with release surgery on right;

1

degeneration of shoulder with right rotator cuff tendonitis/impingement; attention deficit hyperactivity disorder; depression; anxiety/panic disorder; and somatization disorder. [R. 9-1; Page ID# 1238]. Ultimately, the ALJ determined that Sisk became disabled on July 24, 2017 and has continued to be disabled, but was not disabled prior to that date. [R. 9-1; Page ID# 1236]. Sisk believes she should have been found to be disabled as of a date in July 2012, and she brings this action to pursue this position. She believes that the ALJ committed error in his findings, specifically at step three where Sisk contends that the ALJ committed error when considering her mental impairments.

At step three, an ALJ determines whether a claimant's impairment meets or equals one of the impairments listed in the regulations. § 404.1520(a)(4)(iii). If a claimant's impairment does not meet or equal one of the listed impairments, an ALJ then assesses the "residual functional capacity" and determines whether a claimant can perform her past relevant work. § 404.1520(a)(4)(iv). As it relates to Sisk's mental impairments, in this case the ALJ determined that Sisk experienced severe mental impairment from somatization disorder, but that the disorder did not meet or equal one of the listed impairments. Sisk contends that the ALJ erred by failing to find her disabled because she contends that she met the requirements of a listed impairment at step 3 in the sequential evaluation process. Further, Sisk argues that the ALJ erred by failing to formulate a proper residual functional capacity, and by failing to give proper weight to the opinion of Dr. Michael Whitten due to the ALJ's misunderstanding of the disorder. Absent these errors, Sisk asserts that she would have been entitled to a finding that she was disabled beginning in July 2012, rather than July 2017. She brought this appeal from the ALJ's decision seeking to challenge the ALJ's determination that she was under no disability prior to July 24, 2017. She has moved for summary judgment asking that the ALJ's opinion be reversed and her case be remanded for

lack of substantial evidence. [R. 16]. The Commissioner also moves for summary judgment contending that the ALJ did not commit reversible error and asserts that the ALJ's decision is supported by substantial evidence. [R. 21].

## STANDARD

Under 42 U.S.C. §§ 405(g), 1383(c)(3), this Court may review the record for the limited purpose of inquiring into whether the ALJ's findings are supported by substantial evidence and whether the correct legal standards were applied. *See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971). "The substantial evidence standard is met if a reasonable mind might accept the relevant evidence as adequate to support a conclusion." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted). Substantial evidence means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971)(quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 229 (1938)); *Sias v. Secretary*, 861 F.2d 475 (6th Cir. 1988). In conducting its review, a court may not try the case de novo, resolve conflicts in the evidence, or decide questions of credibility. *See Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012). Similarly, an administrative decision is not subject to reversal even if substantial evidence would have supported the opposite conclusion. *See Ulman*, 693 F.3d at 714. Even if the Court were to resolve the factual issues differently, the ALJ's decision must stand if supported by substantial evidence. *See Tyra v. Sec'y of Health & Human Servs.*, 896 F.2d 1024, 1028 (6th Cir. 1990).

**ANALYSIS**

The first issue before the Court is whether the ALJ committed error when finding that Sisk's severe impairment of somatization disorder did not meet or equal one of the listed impairments, and thus compelled a finding of disability. The second issue is whether the ALJ further erred when formulating a residual functional capacity and, finally, whether the ALJ erred by failing to give proper weight to the opinion of Dr. Michael Whitten due to the ALJ's alleged misunderstanding of the disorder. However, for the following reasons the undersigned finds no error justifying remand, and the defendant's motion for summary judgment will be granted.

I. Listed Impairment.

First, Sisk contends that the ALJ properly found her somatization disorder severe but failed to address the disorder under the proper Listing. In the opinion, the ALJ specifically addresses the disorder under listing 12.04, which relates to mood disorders. [R. 9-1, page ID 1291]. Sisk contends that the ALJ should have addressed the disorder under listing 12.07, which pertains to somatic symptom disorders. Sisk cites the case of *Sheeks v. Comm'r of Soc. Sec.*, 544 F. App'x 639, 641 (6th Cir. 2013), arguing that where a claimant raises a substantial question as to whether the claimant is disabled under a listing the ALJ should discuss that listing. However, *Sheeks* also provides that "[t]he relevant regulations require the ALJ to find a claimant disabled if he meets a listing. Yet they do not require the ALJ to address every listing—and with ample reason. There are a hundred or so listings. In the normal course, as a result, the ALJ need not discuss listings that the applicant clearly does not meet, especially when the claimant does not raise the listing before the ALJ. If, however, the record 'raise[s] a substantial question as to whether [the claimant] could qualify as disabled' under a listing, the ALJ should discuss that listing." *Id.* at 641 (citing *Abbott v. Sullivan,* 905 F.2d 918, 925 (6th Cir.1990).

In this case, the undersigned finds no indication that Sisk ever raised the claim that she met the listings under 12.07. In addition, the ALJ's failure to address the disorder under 12.07 is, at most, harmless in this case. To begin, both listings 12.04 and 12.07 have various criteria that must be satisfied before finding that a claimant meets a listing and is therefore disabled. Although both listings have different Category "A" criteria, which must be satisfied, they share identical Category "B" criteria. Whether seeking disability due to suffering from Depressive or Bipolar and related disorders under 12.04, or Somatic symptom and related disorders under 12.07, Category "B" of both listings provides

> B. Extreme limitation of one, or marked limitation of two, of the following areas of metal functioning (see 12.00F):
> 1. Understand, remember, or apply information (see 12.00E1).
> 2. Interact with others (see 12.00E2).
> 3. Concentrate, persist, or maintain pace (see 12.00E3).
> 4. Adapt or manage oneself (see 12.00E4).

20 C.F.R. part 404, Subpart P, Appendix 1.

Here, the ALJ found that Sisk did not meet the listed impairment under 12.04 since she did not satisfy the Category "B" criteria stating that:

> to satisfy the 'paragraph B' criteria, the mental impairments must result in at least one extreme or two marked limitations in a broad area of functioning which are: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing themselves. . . . In understanding, remembering, or applying information, the claimant has a mild limitation before the established onset date. In interacting with others, the claimant has a moderate limitation before the established onset date. With regarding to concentrating, persisting, or maintaining pace, the claimant has a moderate limitation before the established onset date. As for adapting or managing oneself, the claimant has experienced a moderate limitation before eth established onset date. At a neuropsychological examination in February 2014, the claimant reported that she cares for her personal needs, pays her bills, keeps track of her mediation, does household chores, dusts, makes her bed, and gets along with friends, family, and neighbors. She showed good attention and was able to maintain adequate pace (Exhibit 11F). At the hearing, the claimant and her roommate testified that she

5

cares for her personal needs, visits the neighbors, goes to her grandchildren's birthday parties, sweeps, cleans the litterbox, drives a little.

[R. 9-1; Page ID# 1239-1240].

The ALJ's finding that she failed to satisfy the category "B" criteria under 12.04 leads to a conclusion that there is similarly no reason to believe she satisfies the identical category "B" criteria under listed impairment 12.07. In fact, Sisk does not challenge the ALJ's findings that her impairments do not meet or equal the listed impairment under 12.04. Thus, there can be no error in the ALJ's alleged failure to address listing 12.07 relating to somatic symptom disorders and find her disabled under that listing since he did, in fact, address the identical criteria under listing 12.04. For the same reasons Sisk failed to meet listing 12.04, she fails to meet the listing under 12.07, and her argument otherwise is not compelling.

II. Residual Functional Capacity

Second, considering her somatization disorder, Sisk contends that the ALJ formulated a residual functional capacity that was unsupported by any medical opinion. Although the determination of the claimant's RFC lies within the strict purview of the ALJ, 20 C.F.R. § 416.927(e)(2), the claimant retains the burden of establishing her residual functional capacity limitations in this case before the ALJ. When making the RFC determination, the ALJ must consider "the claimant's physical abilities, mental abilities, other abilities affected by impairments, and total limiting effects." *Dragon v. Comm'r of Soc. Sec.*, 470 F. App'x 454, 465 (6th Cir. 2012) (citing 20 C.F.R. § 404.1545(b)-(e)). The ALJ will also consider descriptions of limitations as provided by the claimant, family members, neighbors, friends, and other relevant persons. 20 C.F.R. § 404.15459(a)(3). "A claimant's residual functional capacity is the most that he or she can do despite his or her impairments." *Khudhair v. Colvin*, No. 3:14-CV-581-DW, 2015 WL

2359575, at *10 (W.D. Ky. May 15, 2015) (citation omitted). The ALJ's RFC determination will be upheld by the reviewing court so long as it is supported by substantial evidence. *Brown,* 2007 WL 4556678, at *6." *Belville v. Astrue*, 2011 WL 3922276 at *3 N.D. United States District Court, Ohio, Eastern Division, 1/19/2011.

In this case, the ALJ formulated a residual functional capacity that included limitations relevant to Sisk's mental impairments, stating that Sisk "can persist in attention, concentration and pace for two-hour intervals necessary to complete simple tasks; no more than occasional interaction with co-workers or supervisors; no more than occasional contact with the general public; and should have no more than occasional changes in the workplace setting." [R. 9-1; Page ID# 1240]. This is clearly supported by substantial evidence of record. In fact, the ALJ stated that he considered the opinions of Dr. Adam Brickler, Psy.D., who saw Sisk in March, 2014, who stated that Sisk "showed mildly diminished attention and concentration, and was mildly impulsive and rambling on occasion during the testing and assessment process. She showed no difficulty recalling recent or remote events, and her affect was euthymic with appropriate insight." [R. 9-1; Page ID# 1241]. Dr. Brickler diagnosed Sisk with mild cognitive disorder, vascular type, and major depressive disorder, single episode, moderate. [R. 9-1; Page ID # 1241].

Although Dr. Whitten found Sisk's Global Assessment of Functioning to be 45 [R. 9-1; Page ID#: 1241], Dr. Light saw Sisk in January, 2017, and estimated her GAF at 62, indicating only moderate impairment with a highest GAF in the previous year of 70. Dr. Light recorded in his records that Sisk indicated to him that her goal was to lower her GAF score in order to receive disability. [R 9-1; Page ID# 1242-1243]. Sisk then cancelled her next appointment with Dr. Light, to whom she had been referred by Dr. Whitten. [R. 9-1; Page ID# 1643, 1645]. The ALJ further commented on the inconsistencies he found within Dr. Whitten's treatment notes, including the

7

fact that Dr. Whitten found a GAF of 45, as compared to a GAF of 70 by Dr. Light. Further, Dr. Whitten's opinions were internally inconsistent where Whitten opined that Sisk had only 'slight' limitations, except for 'marked' limitations on her ability to tolerate stress and pressure of day-to-day employment and respond to co-workers and supervisors, and the evidence that she presented as more limited than supported objectively, particularly with regard to her psychological impairments. Therefore, a review of the relevant record shows that the ALJ properly considered Sisk's mental impairments, including somatization disorder in formulating a residual functional capacity, adequately accounting for her limitations in functioning. "It is well established that an ALJ . . . is required to incorporate only those limitations accepted as credible by the finder of fact." See *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993) (citing *Hardaway v. Sec'y of Health & Human Servs.*, 823 F.2d 922, 927–28 (6th Cir. 1987)). Therefore, it will be upheld as it is supported by substantial evidence. *Belville v. Astrue*, 2011 WL 3922276 at *3 N.D. United States District Court, Ohio, Eastern Division, 1/19/2011.

III. Dr. Michael Whitten

Finally, Sisk alleges error stating that the ALJ gave improper weight to the opinions of Dr. Whitten. The ALJ addressed the opinions of Dr. Michael Whitten, stating that he accorded only partial weight to that physician, calling his opinions

> facially inconsistent, such as the contrasting opinions that the claimant had a GAF estimate of 45, and would have 'moderate' difficulty with household chores and 'other physical tasks,' yet could understand and follow complex directions while sustaining attention to conduct complex and multiple-step tasks, and would not require assistance managing funds, if she were awarded them. The inconsistencies in this opinion are brought into sharper relief when compared to other evidence of record, including the no more than 'moderate' limitations on concentration noted at Exhibits 12F and 19F, Dr. Whitten's later opinion at Exhibit 37F in which the claimant was found to have only 'slight' limitations, except for 'marked' limitations on her ability to tolerate stress and pressure of day-to-day employment and respond to co-workers and supervisors, and the evidence that the claimant may have presented as more limited than supported objectively, as noted in Exhibit 39F,

8

> particularly with regard to her psychological impairments. The claimant was noted to have GAF estimates in the 70s in 2017 in the first two sessions with Dr. Light as discussed below (Exhibits 39F, pp. 1-2; 39F, p. 8).

[R. 9-1, Page ID# 1294].

Sisk arguest that the ALJ gave "partial weight" to the opinion of Dr. Whitten, a consultative examiner due to his misunderstanding of the disorder. However, the record reveals that Dr. Whitten's opinions regarding Sisk's mental impairments were given only partial weight, not because the ALJ misunderstood the nature of Sisk's somatization disorder, but because Whitten's opinions were internally inconsistent, and also inconsistent with other evidence of record, including the opinions of Drs. Brickler (diagnosing mild cognitive disorder based upon his finding of only mildly diminished attention and concentration, with no difficulty recalling recent or remote events) and Dr. Light (who found Sisk to have GAF scores of 62 and 70, indicating only moderate impairment). Finally, the ALJ properly considered Sisk's self-serving statement that she desired Light to render an opinion that would result in an award of disability. It is the ALJ's role to evaluate all relevant medical and other evidence and consider what weight to assign to treating, consultative, and examining physicians' opinions." *Eslinger v. Comm'r of Soc. Sec.*, 476 F. App'x 618, 621 (6th Cir. 2012) (citing 20 C.F.R. § 404.1545(a)(3) ). In doing so, an ALJ must simply provide good reasons for the weight he gives a medical opinion. *See Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646, 651 (6th Cir. 2009). In the instant case, the ALJ considered the record, including the opinions of all experts who offered opinions regarding Sisk's mental impairments, and properly articulated the basis for the weight given, supporting his decision with substantial evidence of record.

**CONCLUSION**

As a result, upon consideration of the record and considering the arguments raised by counsel, the Court discerns no error in the ALJ's decision finding that Sisk was not disabled prior to July 12, 2017. Therefore, because the ALJ applied the appropriate standards and properly articulated his findings based upon substantial, objective evidence of record,

IT IS ORDERED that the Commissioner's motion for summary judgment, [R. 21] is GRANTED, and the plaintiff's motion for summary judgment [R. 16] is DENIED.

Signed March 26, 2020.

Signed By:
*Edward B. Atkins* /s/ EBA
United States Magistrate Judge